**Patrick C. JACKAN, Plaintiff–Appellant,**

**United States of America, Intervenor,**

v.

**NEW YORK STATE DEPARTMENT OF LABOR, Defendant–Appellee.**

**Docket No. 98–9589.**

United States Court of Appeals, Second Circuit.

Argued: Sept. 14, 1999.

Decided: March 3, 2000.

Joseph Hein, Altamont, NY, for Plaintiff-Appellant,

Laura Etlinger, Assistant Attorney General, New York State, Albany, NY (Eliot Spitzer, Attorney General, Peter H. Schiff, Deputy Solicitor General, Nancy A. Spiegel and Andrea Oser, Assistant Attorneys General on the brief), for Defendant-Appellee,

Seth M. Galanter, Department of Justice, Washington, DC (Bill Lann Lee, Acting Assistant Attorney General and Jessica Dunsay Silver on the brief), for Intervenor.

Before: WALKER, LEVAL, and POOLER, Circuit Judges.

LEVAL, Circuit Judge:

Plaintiff Patrick Jackan appeals from a decision of the United States District Court for the Northern District of New York (Thomas J. McAvoy, Chief Judge) finding for the defendant, Jackan's employer the New York State Department of Labor ("DOL"), after a bench trial. The complaint alleged that DOL violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), in that it failed, inter alia, to reassign Jackan to a vacant position, so as to "reasonably accommodate" his disability. The district court rejected that con-

tention on the alternate grounds that (1) such a transfer was blocked by valid civil service rules and (2) in any event, no vacancy existed. We hold that a plaintiff alleging a violation of the ADA or Section 504 by virtue of an employer's failure to reasonably accommodate the employee by reassigning him to a suitable vacant position bears the burden of proving that such a vacancy existed. Because Jackan failed to meet his burden, we affirm.

## BACKGROUND

Jackan joined DOL as a Labor Services Representative ("LSR") in September 1981. At that time, he suffered from several injuries and health problems which persisted to the time of the trial, including a moderately serious eye condition, arm and leg problems from an earlier motorcycle accident, and unspecified back problems. As the LSR position was a desk job, plaintiff could handle the duties of the position with minor modifications (a special chair and table, placement of his computer at a non-standard distance, and access to a computer for additional time). DOL provided those accommodations.

In November 1993, after Jackan's health had improved, he was transferred at his request to a position as a Safety and Health Inspector ("SHI") in the Asbestos Control Bureau. This position was a field position, requiring substantial driving and moderate physical exertion (including climbing ladders and squeezing into small places). Jackan passed the various medical and physical examinations required for this new, more strenuous position and successfully performed the duties of an SHI during his one-year probationary period.

In early 1995, Jackan went on medical leave to have spinal surgery. After the surgery, he suffered from serious back and neck problems, which prevented him from lifting and crawling, and which caused such debilitating symptoms as dizziness, headaches, numbness, and trembling, exacerbated by the health problems detailed above and by a migraine condition.

Jackan's doctors cleared him to return to work in a "desk job" as of September 1, 1995. He requested transfer to a desk job (explicitly mentioning his old LSR position as a possibility) and did not return to work in his SHI position. DOL denied his request. Plaintiff appealed that decision to DOL's Compliance Review Board, which rejected his claim. On July 19, 1996, DOL terminated Jackan due to his continued absence from work. He then filed a labor grievance that was rejected.

In rejecting Jackan's claim that he was entitled to a transfer to a desk job as a reasonable accommodation for his disability, DOL and the various reviewing officials noted that, except in rare circumstances, the New York Civil Service Law and Rules bars transfers to positions for which there are "preferred lists" or "reemployment rosters."[1] Without explicitly naming any particular vacancy, or any particular preferred list or reemployment roster, the various officials who evaluated Jackan's claim repeatedly informed him that there was no vacancy to which he could be transferred "in accordance with the Civil Service Law, Rules and Regulations."

Jackan then filed this suit, alleging, inter alia, violations of the ADA and the Rehabilitation Act, and seeking damages, back pay, and injunctive relief requiring his transfer to a desk job. A bench trial was held before Chief Judge McAvoy. At trial, the primary focus of testimony was on the civil service rules that block transfer to a position for which there is a preferred list or reemployment roster. The parties paid little attention to the question whether a vacancy existed. On that point, the only evidence placed before the Judge was an affidavit from Jackan indicating that he believed his prior position as an LSR remained vacant, the testimony of his super-

---

1. Preferred lists and reemployment rosters are created when staff cutbacks require layoffs. Those who lose their positions are put on priority lists for their own jobs and on reemployment rosters for roughly similar positions. The preferred lists are in rank order, while the reemployment rosters simply list the relevant names.

visor in that position indicating that she believed the position was vacant though she could not be certain, and the testimony of a labor relations representative that "[t]he department . . . I believe would have put Mr. Jackan in an LSR position if it wasn't for the existence of . . . mandatory preferred lists."

In a decision dated October 23, 1998, Chief Judge McAvoy found for the DOL on all claims. On the question whether DOL's refusal to transfer Jackan to a desk job constituted a failure to provide a reasonable accommodation, the court held that Jackan was not entitled to a transfer because (1) no vacancy existed and because (2) civil service rules prohibit transfer in the face of a pre-existing reemployment roster. Jackan brought this appeal.

## DISCUSSION

Jackan challenges both prongs of the district court's holding. He argues first that then-operative civil service rules contained an exception that would have permitted his transfer to a vacant position despite the existence of a reemployment roster; second, he contends the court's conclusion that no vacancy existed was clearly erroneous. We affirm the district court's decision on the ground that the plaintiff had the burden of proving the existence of a suitable vacancy, and he failed to make any showing that such a vacancy existed.[2]

### A. Preliminary Issues

■ DOL argues that, for two independent reasons, we need not reach the merits of Jackan's claims. We reject these arguments as foreclosed by our prior decisions. First, DOL argues that the Eleventh Amendment divests the federal court of jurisdiction to hear claims brought by individuals against states under the ADA or the Rehabilitation Act. However, since the initial briefs were filed in this case, we have held that Congress successfully abrogated the States' sovereign immunity from suit under the ADA and Section 504 of the Rehabilitation Act. *See Muller v. Costello,* 187 F.3d 298, 307–11 (2d Cir.1999) (holding that Congress successfully abrogated the states' immunity under the ADA); *Kilcullen v. New York State Dep't of Labor,* 205 F.3d 77 (2d Cir.2000) (holding that *Muller*'s abrogation analysis applies equally to Section 504). We therefore reject DOL's claim of sovereign immunity.[3]

■ DOL also argues that Jackan is not a "qualified individual" entitled to invoke the benefits of the ADA because, even with reasonable accommodations, he is unable to perform the duties of the position he currently holds. According to DOL's analysis, individuals who are unable to perform the duties of their current positions cannot require their employers to transfer them to other vacant positions which they are capable of performing. Both the plain language of the statute and a prior decision of this court foreclose DOL's argument. *See, e.g.,* 42 U.S.C. § 12111(8) (defining a "qualified individual with a disability" as someone who "with or without reasonable accommodation, can perform the essential

---

**2.** Because we affirm the district court's decision on these grounds, we need not address plaintiff's contention that the district court erred in concluding that the applicable Civil Service Law and regulations barred his transfer. We note, however, that the plain terms of the relevant regulations seem to describe a procedure through which such a transfer might have been effectuated. *See* 4 N.Y.C.R.R. § 5.1(a)(1) (creating an exception when an eligible individual "is simultaneously offered reinstatement to . . . [the] vacancy [created by the transfer]").

**3.** The Supreme Court recently granted certiorari in two cases addressing abrogation of State immunity under the ADA. *See Alsbrook v. Arkansas, cert. granted,* —— U.S. ——, 120 S.Ct. 1003, 145 L.Ed.2d 947 (2000); *Florida Dep't of Corrections v. Dickson, cert. granted,* —— U.S. ——, 120 S.Ct. 976, 145 L.Ed.2d 926 (2000). The grants of certiorari were subsequently dismissed after the parties settled. *See Alsbrook v. Arkansas, cert. dismissed,* —— U.S. ——, 120 S.Ct. 1265, —— L.Ed.2d —— (2000); *Florida Dep't of Corrections v. Dickson, cert. dismissed,* —— U.S. ——, 120 S.Ct. 1236, 145 L.Ed.2d 1131 (2000).

functions of the employment position that such individual holds *or desires* " (emphasis added)); *Stone v. City of Mount Vernon,* 118 F.3d 92, 100–01 (2d Cir.1997) (vacating summary judgment entered against a partially paralyzed firefighter who argued that failure to assign him to an administrative desk job constituted a violation of the ADA and the Rehabilitation Act); *see also Smith v. Midland Brake, Inc.,* 180 F.3d 1154, 1162–63 (10th Cir. 1999) (en banc) (noting that eight of nine circuits that have addressed this question have similarly found). If Jackan can establish that there was a vacant position into which he could have been transferred pursuant to then-existing civil service rules whose duties he could have performed, he may claim the protection of the ADA and the Rehabilitation Act.

## B. The Burden of Proof on Establishing the Existence of a Vacancy

Though Jackan's request for a transfer was initially denied on the ground that civil service rules prohibited a transfer in the face of a reemployment roster, the district court also relied on the alternative ground that no vacancy existed at the time Jackan made his request. On appeal, Jackan argues that that finding was "clearly erroneous." On our review of the record, we find insufficient evidence either to prove or disprove the existence of a vacancy. Resolution of this issue thus turns on which party bears the burden of proof on the question of whether a vacancy existed. We hold that, in order to recover under the ADA or the Rehabilitation Act for a failure to reasonably accommodate by transfer, a plaintiff bears the burden of establishing that a vacancy existed into which he or she might have been transferred. As Jackan did not meet that burden, we affirm the district court's judgment in favor of the defendant.

Our explanation begins with the relevant statutory framework. An employer violates the ADA and the Rehabilitation Act when it fails to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee," unless the employer can establish that the accommodations would "impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A); *see also* 29 U.S.C. § 794(d) (stating that ADA's standards govern determinations whether employers have violated the employment provisions of the Rehabilitation Act). According to the express terms of the ADA, "[t]he term 'reasonable accommodation' may include ... reassignment to a vacant position." 42 U.S.C. § 12111(9).

■ The ADA envisions an "interactive process" by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated. *See, e.g., Beck v. University of Wis. Bd. of Regents,* 75 F.3d 1130, 1135 (7th Cir.1996); 29 C.F.R. § 1630.2(*o*)(3). Courts have struggled to define the appropriate burdens of persuasion when that process breaks down and an employee seeks relief on the ground that his employer failed to "reasonably accommodate" his disability. In *Borkowski v. Valley Central School District,* 63 F.3d 131, 137–38 (2d Cir.1995), we laid out a two-step process to evaluate whether the failure to provide a proposed accommodation constitutes a violation of the ADA. First, "the plaintiff bears the burden of proving ... that an accommodation exists that permits her to perform the job's essential functions." *Id.* at 138. If the plaintiff meets that burden, the analysis shifts to the question whether the proposed accommodation is reasonable; on this question the burden of persuasion lies with the defendant. *See id.*

■ Our reading of *Borkowski* places the burden of establishing that a vacancy exists on the plaintiff-employee. When a plaintiff brings an action alleging that a defendant violated the ADA by failing to offer a reasonable accommodation, the claim fails unless the plaintiff establishes that "an effective accommodation exist[ed] that would render her otherwise qualified." *Id.* at 139. The burden of persuasion on the "existence" of an "effective accommodation" is not satisfied by mere specula-

tion. For example, an employee with a severe motor disorder could not successfully carry her burden of persuasion by asserting that she would have been qualified to perform the duties of her position with the assistance of a mechanical device that compensates for her disorder. She would need to demonstrate that such a device existed and was available to her employer. (The employer would then bear the burden of proving that the machine was impractical, unreasonably expensive, unsuitable, or otherwise not a reasonable accommodation.) Similarly, a plaintiff seeking to hold the employer liable for failing to transfer her to a vacant position as a reasonable accommodation must demonstrate that there was a vacant position into which she might have been transferred. Jackan has failed to meet this burden.

Relying upon isolated quotations drawn out of context from our opinion in *Borkowski,* Jackan argues that an ADA employer-defendant bears the burden of persuasion on all facets of the question whether a plaintiff's disabilities could have been reasonably accommodated. We reject this reading as inconsistent with both the letter and the spirit of *Borkowski.* Plaintiff points to two passages in *Borkowski.* At one point the *Borkowski* opinion stated "[i]t is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Id.* at 138. Read out of context, that sentence arguably suggests that the plaintiff bears only a burden of production on the existence of an accommodation, rather than the burden of persuasion. But when the sentence is read in the context of the preceding sentences, it clearly refers to the *reasonableness* of the accommodation, not its existence:

As to the requirement that an accommodation be reasonable, we have held that the plaintiff bears only a burden of production. This burden, we have said, is not a heavy one. It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of

which, facially, do not clearly exceed its benefits.

*Id.* (emphasis added) (citations omitted). Before a factfinder reaches the question of the reasonableness of the accommodation—upon which the burden of persuasion falls on the employer-defendant—it must first determine that an accommodation *existed.* In our view *Borkowski* teaches that the plaintiff bears both the burden of production and of persuasion on the prior question of the existence of the accommodation.

Jackan similarly relies on the statement in *Borkowski* that "[o]n the issue of reasonable accommodation, the plaintiff bears only the burden of identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits." *Id.* at 139. Once again, the context of the statement makes clear that the reference to "the issue of reasonable accommodation" was intended to focus on the "reasonableness," not the existence, of the accommodation. Plaintiff's interpretation of this clause would conflict with the opinion's holding by excusing a plaintiff from the burden of establishing the existence of the accommodation. Indeed, the sentence immediately preceding reiterates that element of the opinion's holding: *"First,* the plaintiff bears *the burden of proving* that she is otherwise qualified; if an accommodation is needed, the plaintiff must show, as part of *her burden of persuasion,* that an effective accommodation exists that would render her otherwise qualified." *Id.* (emphases added).

■ We therefore conclude, consistent with our holding in *Borkowski,* that Jackan, as an ADA plaintiff complaining of his employer's failure to provide a reasonable accommodation, bears both the burden of production and the burden of persuasion on the question whether a suitable vacancy existed at the time he sought transfer. We note that our holding draws further support from the recent decisions of our sister circuits. *See, e.g., Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1304 n. 27 (D.C.Cir.1998) (en banc) (an ADA plaintiff

568

"ha[s] an obligation to demonstrate that there existed some vacant position to which he could have been reassigned"); *McCreary v. Libbey–Owens–Ford Co.*, 132 F.3d 1159, 1165 (7th Cir.1997) ("The plaintiff bears the burden of showing that a vacant position exists and that the plaintiff is qualified for that position."); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir.1997) (holding that the burden of production and persuasion regarding the existence of a plausible accommodation both lie with the plaintiff); *Mengine v. Runyon*, 114 F.3d 415, 420 (3d Cir.1997) ("[T]he employee has the duty to identify a vacant, funded position whose essential functions he is capable of performing.").[4]

For the foregoing reasons, we hold that a plaintiff seeking to recover under the ADA or Section 504 of the Rehabilitation Act for his employer's failure to transfer him to a vacant position, bears the burden of establishing the existence of an appropriate vacancy. As the plaintiff in this action did not meet that burden, we affirm the district court's ruling in favor of the defendant on the ground that no vacancy has been shown to exist.

## CONCLUSION

The judgment of the district court is hereby AFFIRMED.

---

4. We recognize that some of the cited decisions and the relevant federal regulations impose an obligation upon an employer to take affirmative steps to assist an employee in identifying potential accommodations. *See, e.g., Aka,* 156 F.3d at 1304 n. 27; *Mengine,* 114 F.3d at 419–20; 29 C.F.R. §§ 1630.2(*o*)(3), 1630 App. Our decision in no way conflicts with that obligation. The question whether an employer bears a legal duty to assist an employee in identifying appropriate vacant positions in the immediate aftermath of a request for reasonable accommodation is analytically distinct from the question of which party bears the burden of persuasion on the existence of a vacancy in

litigation. In this opinion, we hold merely that when an employee sues for failure to accommodate reasonably by transfer to a vacant position, the employee has the burden of proving that a suitable vacant position existed.

Jackan suggests that placing the burden on the plaintiff to prove the existence of a vacancy is unfair, given the employer's greater access to this information. This concern is over-stated. Once the litigation has begun, the plaintiff can utilize the liberal discovery procedures of the Federal Rules of Civil Procedure, including interrogatories, depositions, and document demands, to identify vacancies that existed at the pertinent time.