**Herrick HENZEL, Plaintiff,**

v.

**DELAWARE OTSEGO CORPORATION; and the New York, Susquehanna and Western Railway Corporation, Defendants.**

No. CIV.5:00–CV–1550(GLS).

United States District Court, N.D. New York.

Oct. 2, 2003.

Hage, Hage Law Firm (Daniel A. Burgess, of Counsel), Utica, NY, for Plaintiff.

Bond, Schoeneck Law Firm (Edward R. Conan, Esq., Suzanne O. Galbato, Esq., of Counsel), Syracuse, NY, for Defendants.

### Memorandum–Decision and Order

SHARPE, United States Magistrate Judge.

## I. Introduction

Herrick Henzel commenced this action alleging employment discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. §§ 12112 et. seq., and the New York State Human Rights Law, N.Y. Exec. Law § 290 et. seq. (McKinney 2001) by the defendants, the Delaware Otsego Corporation and the New York, Susquehanna and Western Railway Corporation (respectively, "Delaware" and "Susquehanna").

Although his amended complaint was unclear, Henzel now agrees that he claims: Delaware and Susquehanna failed to accommodate his alleged disability (colitis); they unlawfully terminated him because of his disability; and, they retaliated against him by terminating his COBRA medical benefits.[1] Before the court is defendants' motion for summary judgment.[2]

Because he could not work regardless of any accommodation and because he never requested an accommodation, Henzel has failed to establish a prima facie case of employment discrimination. Furthermore, he has failed to establish a prima facie case of retaliation because the alleged retaliatory conduct post-dated his termination, and the conduct was required by contract and protected by law in any event. Accordingly, the court grants the defendants' motion for summary judgment on the federal employment discrimination and retaliation claims, and dismisses Henzel's state law claims without prejudice.

## II. Background

Either uncontested or resolved in Henzel's favor, the facts reflect that he began working for the Railroad as a diesel mechanic on September 4, 1995, and worked full-time until August 18, 1998.[3] On that date, he left work sick with a condition that was ultimately diagnosed as ulcerative colitis. He was available to return to work by December 14, 1998, but did not actually return until March 15, 1999.[4] When he returned, he made a specific request for reduced work hours as an accommodation recommended by his doctor. The Railroad acquiesced, and he worked on a part-time basis for one month.

On April 14, Henzel again left work as a result of his colitis, and never returned. After he left, he underwent two surgical procedures in April and May, and was hospitalized both times. Although the parties disagree about his post-April 14 em-

---

1. On August 7, 2002, the court conducted a motion hearing, the record of which is specifically incorporated in this decision. At the hearing, the court resolved and refined a number of issues that were otherwise unclear in the complaint and motion papers. Since it has not been transcribed, the court simply references the proceeding as "Hearing Rec," and the parties are free to order a transcript.

2. The parties have consented to trial before this court. See 28 U.S.C. § 636(c).

3. The court refers to the employer as the "Railroad" because there is a factual dispute

as to whether Delaware or Susquehanna actually employed Henzel. The resolution of that dispute is unnecessary to the determination of the motion.

4. The parties disagree about Henzel's employment status during his absence. The Railroad asserts that Henzel was laid off while Henzel asserts that he was on an unpaid leave of absence. The argument rests on competing, undocumented verbal statements, and the court, as it must, resolves the issue in Henzel's favor.

ployment status, the court adopts Henzel's position that he was on an unpaid leave of absence. During his recuperation, Henzel stopped at work every two weeks, and talked to his supervisors about his condition and his expectation that he would be able to return to work in December. However, Henzel concedes three salient facts: he never made any request for any accommodation; he was medically incapable of working with or without an accommodation until subsequent surgery in 2000;[5] and, he never told the Railroad that he was ready and able to return to work.

On July 30, 1999, the Railroad notified Henzel that it was terminating his employment, and mailed a COBRA medical benefits election form. The Railroad's uncontested assertion was that Henzel's termination resulted from a reduction in force caused by competitive industry pressures, and that his steam locomotive mechanic's position had been completely eliminated.

When Henzel received the election form concerning post-termination medical benefits, it also advised that he had been terminated because he was not working. On August 10, he called Tabitha Rathburn, the Railroad's head of human resources, who told him that his employment had been terminated because he was not working and because he was "too much of an expenditure for us and our insurance." He advised her that he intended to "get a lawyer."

On September 18, Henzel elected to continue his medical benefits, completed the form and mailed the initial premium. Thereafter, he made no further premium payments, and his benefits were terminated for non-payment of the premium.

There is no dispute that he did not receive a statement from the insurer concerning a premium due nor is there a dispute that regardless, he did not pay the premium. It is uncontested that termination was required under the insurance contract for failure to pay the premiums. Furthermore, the termination occurred on October 29, 1999, three months after Henzel's discharge, and three months before he filed an administrative discrimination complaint.

On February 3, 2000, the Railroad first received notice from the Equal Employment Opportunity Commission ("EEOC") that Henzel had filed an administrative charge of employment discrimination under the ADA. Other than Henzel's conversation with Rathburn, there were no conversations between Henzel and the Railroad concerning employment discrimination, and no conversations after April 14 regarding reasonable accommodations.

### III. *Discussion*

#### A. *Summary Judgment Standard*

It is well settled that on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party, *see Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999), and may grant summary judgment only where "there is no genuine issue of material fact and . . . the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P. 56(c).* An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**5.** *See Hearing Rec. and Henzel Statement of Material Facts, ¶ 11.* Henzel's concessions are in direct contradiction to sworn assertions in his complaint. *Cf. Amend. Compl., Dkt. No. 10 at ¶¶ 15, 18.*

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant is able to establish a *prima facie* basis for summary judgment, the burden shifts to the party opposing summary judgment to produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "When a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." *St. Pierre v. Dyer,* 208 F.3d 394, 404 (2d Cir.2000). The nonmoving party may not rely on conclusory allegations or unsubstantiated speculation. *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998).

The court notes that plaintiff's submissions failed to include a Statement of Material Facts in opposition to the Defendants' Statement of Material Facts. Rather, plaintiff submitted his own Statement of Material Facts, and the defendants responded. Local Rule 7.1(a)(3) specifically provides that "any facts set forth in the [moving party's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." The Local Rules further require that the non-movant shall file a Statement of Material Fact which mirrors the movant's statement in matching numbered paragraphs and which set forth a specific reference to the record where the material fact is alleged to arise. Northern District courts have strictly applied Local Rule 7.1(a)(3)'s requirement. *See Bundy Am. Corp. v. K–Z Rental Leasing, Inc.,* 00–CV–260, 2001 WL 237218, at *1 (N.D.N.Y. Mar. 9, 2001) (Hurd, J.); *I.B.E.W. Local No. 910 Welfare, Annuity, and Pension Funds v. Dexelectrics, Inc.,* 98 F.Supp.2d 265, 270 (N.D.N.Y.2000) (McAvoy, CJ).

Furthermore, this Circuit subscribes to the view that nothing in Rule 56 imposes an obligation on the court to conduct a searching and independent review of the record to find proof of a factual dispute. *Amnesty America v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2002). As long as the local rules impose a requirement that parties provide specific record citations in support of their statement of material facts, the court may grant summary judgment on that basis. *Id.* Although the court accepts the properly supported facts contained in defendants' 7.1 Statement as true, it notes that most factual disparities were resolved during the motion return hearing.

With the summary judgment standard in mind, the court turns to the parties' arguments.

### B. *The Discrimination Claim*

Henzel sues the Railroad for discriminatory discharge. *See Hearing Rec.* The Railroad argues, *inter alia,* that Henzel was not employed by Delaware; he was not disabled within the meaning of the statute; and, he was not otherwise qualified to perform the job with or without an accommodation.

The ADA prohibits covered employers from discriminating against an otherwise qualified employee "because of the disability of such an individual in regard to . . .

discharge ... and other terms, conditions, and privileges of employment." *42 U.S.C. § 12112(a)*. The statute defines "qualified individuals with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such an individual holds or desires." *42 U.S.C. § 12111(8)*. Discrimination includes "not making reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability ... unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business ..." *42 U.S.C. § 12112(b)(5)(A)*.

■ To establish a *prima facie* case of discriminatory discharge, Henzel must first demonstrate that his employer was covered by the statute and then prove: "(1) he was a disabled person within the meaning of the ADA, (2) [the employer] had notice of his disability; (3) with reasonable accommodation he could perform the essential functions of [his job]; and, (4) [the employer] refused to make such accommodations." *Mitchell v. Washington-ville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir.1999) (alterations added). If Henzel satisfies the first three elements, then the Railroad's failure to make reasonable accommodation would establish a *prima facie* case of disability discrimination. *Parker v. Columbia Pictures Industries*, 204 F.3d 326, 332 (2d Cir.2000) (*Parker I*) (citing *Stone v. City of Mount Vernon*, 118 F.3d 92, 96–97 (2d Cir.1997)), *aff'd in part and rev'd in part foll. remand, sub. nom. Parker v. Sony Pictures Entertainment, Inc.*, 260 F.3d 100 (2d Cir.2001) (*Parker II*). If an accommodation was requested, the burden would then shift to the Railroad to demonstrate that the proposed accommodation would have resulted in undue hardship. *Parker I* at 332 (citing *Stone*, 118 F.3d at 97).

The first prerequisite is proof that the employer is subject to the statute. *Lyons v. Legal Aid Society*, 68 F.3d 1512, 1515 (2d Cir.1995). Here, the Railroad does not contest that it is generically subject to the statute, but does argue that Susquehanna was Henzel's employer, not Delaware. As the court stated during the motion return, Henzel has asserted facts sufficient to create a triable issue as to whether both Delaware and Susquehanna were his employers. *See Parker I*, at 341–42. As to whether Henzel's ulcerative colitis is a disability within the meaning of the statute, the court presumes so although it declines to definitively reach the issue since Henzel has failed to prove that he is otherwise qualified.[6]

■ Henzel bears the burden of production and persuasion on the issue of whether he was otherwise qualified. *Jackan v. New York State Dep't of Labor*, 205 F.3d 562, 567–68 (2d Cir.2000). He also bears the burden of proving that he either met the job requirements without assistance, or that an accommodation existed that would have permitted him to perform the job. *Id.* at 567–68. It is axiomatic that an individual cannot perform the essential functions of a job if he is completely unable to work regardless of accommodation. *Adams v. Master Carvers of Jamestown, Ltd.*, No. 00–CV–0808E(SR), 2002 WL 31194562, at *4 (W.D.N.Y. Sept. 12, 2002); *Thorner-Green v. New York City*

---

**6.** The court observed during the hearing, however, that it was likely that Henzel had created triable issues of fact concerning whether he was substantially limited in the activities of controlling elimination of wastes and working. *Cf. Ryan v. Grae & Rybicki*, 135 F.3d 867 (2d Cir.1998); *Johnson v. New York Medical College*, No. 95 CIV. 8413, 1997 WL 580708 (S.D.N.Y. Sept. 18, 1997); *Mazza v. Bratton*, 108 F.Supp.2d 167 (E.D.N.Y.2000).

*Dep't of Corrections,* 207 F.Supp.2d 11, 15 (E.D.N.Y.2002); *Robarge v. Potter,* No. 01 CV 0417(SJ), 2002 WL 32061800, at *6 (E.D.N.Y. Mar. 14, 2002); *Barnett v. Revere Smelting & Refining Corp.,* 67 F.Supp.2d 378, 391 (S.D.N.Y.1999); *Bobrowsky v. New York City Bd. of Educ.,* No. 97CV874(FB), 1999 WL 737919, at *4 (E.D.N.Y. Sept. 16, 1999); *Mescall v. Marra,* 49 F.Supp.2d 365, 374–75 (S.D.N.Y. 1999); *Micari v. Trans World Airlines, Inc.,* 43 F.Supp.2d 275, 281 (E.D.N.Y. 1999); *Daddazio v. Katherine Gibbs Sch., Inc,* No. 98 Civ. 6861(DC), 1999 WL 228344, at *5 (S.D.N.Y. Apr. 20, 1999), *aff'd,* 205 F.3d 1322 (2d Cir.2000); *Querry v. Messar,* 14 F.Supp.2d 437, 444 (S.D.N.Y. 1998); *Aquinas v. Federal Express Corp.,* 940 F.Supp. 73, 78 (S.D.N.Y.1996). Several other Circuits have acknowledged this principle. *See Tyndall v. Nat'l Educ. Centers, Inc. of Cal.,* 31 F.3d 209, 213 (4th Cir.1994); *Hypes v. First Commerce Corp.,* 134 F.3d 721, 727 (5th Cir.1998); *Nowak v. St. Rita High Sch.,* 142 F.3d 999, 1003 (7th Cir.1998); *Pickens v. Soo Line Railroad Company,* 264 F.3d 773 (8th Cir. 2001); *Carr v. Reno,* 23 F.3d 525, 530 (D.C.Cir.1994).

Here, Henzel admits that when he left work on April 14, 1999, he was completely unable to do his job, with or without an accommodation, until after surgery sometime in 2000, a period of at least nine months.[7] Of course, accepting Henzel's termination date as coextensive with the date of the COBRA notice, the time frame is April 14 to July 30, a period of three and one-half months.[8] In any event, Henzel does not dispute the Railroad's assertion that at the time of termination, his position as a steam locomotive mechanic was totally eliminated. He has neither suggested nor argued that there was any position he could have filled. *Cf. Miletta v. Waste Management of New York,* 5:00–CV–888 (N.D.N.Y. Oct. 29, 2001), *aff'd* 46 Fed. Appx. 31, 2002 WL 31056668 (2d Cir.2002) (summary order).

■ Although Henzel was totally incapable of working at the time of his termination, the court must not exclude the accommodation issue from its analysis. *See Parker II,* 204 F.3d at 338 (citing *Borkowski v. Valley Cent. Sch. Dist.,* 63 F.3d 131, 143 (2d Cir.1995)). As the Circuit has stated:

> The duty to make reasonable accommodations does not, of course, require an employer to hold an injured employee's position open indefinitely while the employee attempts to recover, nor does it force an employer to investigate every aspect of an employee's condition before terminating him based on his inability to work. At the very least, however, an employee who proposes an accommodation . . . triggers a responsibility on the employer's part to investigate that request and determine its feasability.

*Parker I,* at 338. Naturally, Henzel has the burden of demonstrating that he requested an accommodation, and he concedes that he did not. *See Jackan v. New York State Dep't of Labor,* 205 F.3d at 567–68. The ADA regulations also provide as much, stating "it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." *29 C.F.R. Pt. 1630.9, App.* As the court in *Flemmings v. Howard Univ.,* 198 F.3d 857, 862 (D.C.Cir.1999) stated,

---

**7.** The record is unclear concerning the exact date of the 2000 surgery.

**8.** Courts have held that the critical date for determining an employee's qualifications is the date of the adverse employment decision. *Nowak v. St. Rita High School,* 142 F.3d 999 (7th Cir.1998).

"[a]n underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied".

Henzel concedes that there was no accommodation that would have permitted him to do his job and that he made no request, but nonetheless argues that the Railroad should have continued his unpaid leave status without terminating his job. *Cf. Garcia–Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638 (1st Cir.2000). While it is true that an unpaid leave, even of extensive duration, might be a reasonable accommodation under certain circumstances, such circumstances are not evident in this case where there was no job remaining. Accordingly, Henzel was not a qualified individual within the ambit of the ADA.

### C. *The Retaliation Claim*

■ The ADA prohibits retaliation against any individual who has asserted rights under that statute, providing "[n]o person shall discriminate against any individual because such individual ... made a charge ..." *42 U.S.C. § 12203(a)*. In order to establish a *prima facie* case, Henzel must demonstrate that: "(1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and, (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir.2002). Although Henzel's burden at the summary judgment stage is *de minimis, Id.* at 719, he has failed to satisfy that burden.

■ At oral argument he clarified that his retaliation claim relates to the termination of his medical benefits, not his employment termination. *See Hearing Rec.* He offers no evidence and makes no cogent argument that he was engaged in a protected activity when his benefits were terminated. He concedes that he never requested an accommodation, that there were no conversations of any kind with his employer concerning disability discrimination, and that his employment had been terminated three months earlier. The only conversation whatsoever was with Rathburn who told him that he had been terminated to which he replied, "I'll get a lawyer." No reasonable jury could conclude that Henzel's comment was sufficient to denote protected activity or support the conclusion that the employer was aware that he was engaged in protected activity. *See Munck v. New Haven Savings Bank*, 251 F.Supp.2d 1078, 1088 (D.Conn.2003). At best, it suggests some future, unspecified course of conduct.

■ Even if, without any evidentiary support, the court took a quantum leap and concluded that Henzel was engaged in a reasonable accommodation when terminated in July (leave without pay), there is no evidence of a causal connection between that action, his employment termination and the termination of his medical benefits. Henzel must offer evidence that the alleged adverse action occurred in circumstances from which a reasonable jury could infer retaliatory intent. *Treglia v. Town of Manlius*, 313 F.3d at 721; *Stuevecke v. New York Hospital Medical Center of Queens*, No. 01–CV–326(FB)(RLM), 2003 WL 22019073, at *5 (E.D.N.Y. Aug. 26, 2003).

■ Here, it is uncontested that his medical benefits were terminated because he simply failed to pay the premium, a requirement applicable to all Railroad employees under the Group Benefit Plan. In turn, that plan was a bona fide, self-insured plan within the meaning of the Employment Retirement Insurance Security

Act of 1974 ("ERISA"). *29 U.S.C. § 1002(1); see Piquard v. City of East Peoria*, 887 F.Supp. 1106, 1120 (C.D.Ill. 1995). As a bona fide, self-insured benefit plan, it falls within the "safe harbor" provision of the ADA. *42 U.S.C. § 12201(c)(3)*. The safe harbor provision specifically exempts such plans from ADA coverage unless they are a subterfuge to evade the purposes of the statute. *See Saks v. Franklin Covey Co.*, 117 F.Supp.2d 318, 327–28 (S.D.N.Y.), *judg. aff'd in part, remand. in part on other grounds*, 316 F.3d 337 (2003). There is nothing in the Railroad's plan that functions as a subterfuge for disability discrimination. The failure to pay a premium no later than the thirty day grace period automatically terminates coverage for each and every employee. Without dispute, Henzel was provided notice of that consequence, but nonetheless failed to pay the premium. Termination of his benefits was therefore required under the insurance contract, and protected by the ADA's safe harbor provision.

Accordingly, Henzel's retaliation claim is without legal or evidentiary support.

### D. *State Law Claims*

Henzel asserts state law claims under the New York Human Rights Law. Having found that summary judgment is proper with respect to his federal claims, the court dismisses the remaining state law claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

### IV. *Conclusion*

After carefully considering the file in this matter, the parties' submissions and oral argument, and the applicable law, and for the reasons stated herein as well as at oral argument, it is hereby

**ORDERED** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff's federal claims; and it is further

**ORDERED** that Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE**; and it is further

**ORDERED** that the Clerk of Court enter judgment in favor of Defendants and close this case; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum–Decision and Order upon the parties by regular mail.

**IT IS SO ORDERED.**