Andrew J. POWERS, Plaintiff,

v.

POLYGRAM HOLDING, INC., Defendant.

No. 98 Civ. 2417(WCC).

United States District Court, S.D. New York.

April 2, 1999.

Lovett & Gould, White Plains, NY (Gerard J. O'Hara, of counsel), for plaintiff.

Rains & Pogrebin, P.C., Mineola, NY (Craig R. Benson, Jennifer R. Snyder, of counsel), for defendant.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

This action for employment discrimination under the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12217, and the New York State Executive Law § 296 et seq., is before the Court on defendant's Rule 56 motion for summary judgment. Fed.R.Civ.P. 56. For the reasons stated hereinafter, the motion is granted in part and denied in part.

## BACKGROUND

The relevant facts are largely undisputed. Plaintiff, Andrew Powers, was employed by Defendant Polygram Holding, Inc. from December 5, 1994 until his termination on September 15, 1997. Plaintiff suffers from clinically diagnosed manic depressive disorder, and was under the care of a psychiatrist at all relevant times. During this time period, he was an Associate Tax Director in defendant's tax department. The tax department was budgeted to have twelve full-time employees. By all accounts, the period leading up to plaintiff's termination was an exceedingly busy time in the department because of a September deadline for filing a large number of tax returns and an ongoing Internal Revenue Service ("IRS") audit, with many of the employees, plaintiff included, typically working twelve-hour days.

On May 4, 1997, plaintiff, because of his mental illness, requested that defendant reduce his working hours and his responsibilities. On May 29, 1997, this request was granted. Plaintiff's hours were limited to 8:30am to 4:30pm each day, and it was agreed that plaintiff would no longer be responsible for reviewing foreign tax payments or matters related to the IRS audit. In view of the reduction in hours, plaintiff's salary was reduced by twenty percent.

On June 18, 1997, plaintiff could no longer continue working and requested a six-week leave of absence, which was granted. At the end of that period, plaintiff informed defendant that he was still unable to return to work and requested an additional one-month leave of absence. That request was also granted. When that period was about to expire, plaintiff asked defendant for approximately one more month of leave. That request was likewise granted. After a total of approximately thirteen weeks of leave, plaintiff made another request for one additional month of leave, estimating his return date to be October 13, 1997, which would have resulted in an overall leave of absence approximating seventeen weeks. This request was denied and plaintiff was subsequently fired.

Because of his termination, plaintiff claims that he was unlawfully discriminated against and retaliated against because of his disability, in violation of the ADA and New York State Executive Law § 296. Plaintiff also claims that defendant retaliated against him because he was disabled by putting him in an undesirable

**198**

office, forcing him to prepare tax returns, giving him insufficient information to complete his work, and compelling him to use an inadequate computer program. Plaintiff seeks compensatory and punitive damages. For the reasons stated hereinafter, we deny defendant's motion to dismiss those claims related to plaintiff's allegedly wrongful termination. However, plaintiff's claim that defendant either caused or exacerbated his manic depressive disorder is dismissed in part. Additionally, each of plaintiff's claims related to his office space, being required to prepare tax returns, possessing insufficient information to do his work, and having to use an inadequate computer program are dismissed. Finally, all claims for punitive damages are dismissed.

## DISCUSSION

### I. *Standard on Summary Judgment*

A district court may grant summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact, *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir.1996), and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir.1995). The party seeking summary judgment has the burden of showing that no genuine factual dispute exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

### II. *Plaintiff's Claim that Defendant Violated the ADA by Firing Him*

■ According to defendant, the facts of this case are so strong that no reasonable jury could conclude that, with the benefit of "reasonable accommodation," plaintiff would have been a "qualified individual with a disability" under the ADA. The ADA prohibits employment discrimination based on an employee's disability. Specifically, the ADA mandates that:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (1994). To defeat an employer's motion for summary judgment dismissing an ADA claim, an employee must first make out a prima facie case of discrimination by establishing the following elements: (1) that he was disabled within the meaning of the Act; (2) that with or without reasonable accommodation he was a qualified individual able to perform the essential functions of the job; and (3) that the employer discriminated against him because of his disability. *Criado v. IBM Corp.*, 145 F.3d 437, 441 (1st Cir.1998); *Jacques v. Clean–Up Group, Inc.*, 96 F.3d 506, 511 (1st Cir. 1996). The burden of going forward then shifts to the employer to provide a nondiscriminatory explanation for the employment decision. *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir.1998).

This portion of defendant's motion essentially turns on the second element of a prima facie case—that is, the question whether plaintiff, with the benefit of "reasonable accommodation," was a "qualified" employee. The ADA defines a "qualified individual with a disability" as an "individual with a disability who, with or without reasonable accommodation, can perform

the essential functions of the employment position ...." 42 U.S.C. § 12111(8). Defendant asserts that plaintiff's final request for leave, after he had been granted extensive leave time, was an unreasonable request for accommodation, and thus he was unqualified to perform the essential functions of his position since he could not return to work without such additional time off.

Defendant does not dispute that mental illness is covered by the ADA, since the regulations interpreting the ADA specifically explain that "disability" includes, "Any mental or physiological disorder, such as .... mental illness ...." 29 C.F.R. § 1630.2(h)(2). *See also Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054 (7th Cir.1998). Defendant also does not dispute that leaves of absence are an appropriate form of reasonable accommodation contemplated by the ADA. *See Criado*, 145 F.3d at 443; *Rodgers v. Lehman*, 869 F.2d 253, 259 (4th Cir.1989) (decided under § 501(b) of the Rehabilitation Act and finding leave of absence is a reasonable accommodation for alcoholics); *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 878–79 (9th Cir. 1989) (interpreting an analogous state statute); 29 C.F.R. pt. 32, App. A(b) (Department of Labor regulations announcing that a reasonable accommodation may require an employer "to grant liberal time off or leave without pay when paid sick leave is exhausted and when the disability is of a nature that it is likely to respond to treatment of hospitalization"); 29 C.F.R. pt. 1630, App. (EEOC interpretive guidance on the ADA stating that a reasonable accommodation "could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment"). Nonetheless, defendant asks the Court to rule as a matter of law that while the ADA specifically contemplates leaves of absence as an appropriate accommodation, we must hold that a seventeen-week leave of absence is simply so long as to render plaintiff legally unqualified for his job. It is a position we cannot accept.

For this proposition, defendant relies on an oft-quoted legal principle: "Nothing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period for an accommodation to achieve its intended effect." *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir.1995); *see also Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir.1996). While the Second Circuit has not specifically addressed this issue, the First, Sixth, Seventh, Tenth, and Eleventh circuits have. These decisions, coupled with our own assessment of the ADA, compel us to hold that we cannot rule, as a matter of law, that plaintiff's request for a seventeen-week leave of absence renders him legally unqualified to work.

For example, in *Criado*, 145 F.3d 437, the plaintiff suffered from clinically diagnosed depression and requested a leave of absence, just as in the instant case. Plaintiff requested one disability leave which was granted, but was not well enough to return to work when the period of this leave had expired. The plaintiff requested additional leave, with no specific return date given, but merely provided a letter from her doctor informing the employer that she would be able to return to work if she were given more leave time. The First Circuit found no error in the district court's denial of the employer's motion for a judgment as a matter of law on the issue of whether plaintiff's leave request was a reasonable accommodation.

Similarly, in *Cehrs*, 155 F.3d 775, the plaintiff requested and was granted an approximately eight-week leave of absence. At the end of this period, her condition not yet improved, plaintiff requested an additional month of leave, but defendant denied the request and fired her instead. Based on these facts, the Sixth Circuit found that a genuine issue of fact existed as to whether this leave constituted a reasonable accommodation under the ADA. *Id.* at 783. The Seventh Circuit adopted this same approach in a case in which an

employee suffering from lupus was fired after requesting a second leave of absence. *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591 (7th Cir.1998). Even though medical experts called by the defendant at trial estimated that plaintiff would have required approximately three months of leave, *Haschmann*, 151 F.3d at 598, the Seventh Circuit held that there was sufficient evidence from which a reasonable juror could conclude that the requested medical leave would have been a reasonable accommodation, specifically holding that the "reasonableness of a requested accommodation is a question of fact." *Id.* at 601.

Finally, in *Rascon v. U.S. West Communications, Inc.*, 143 F.3d 1324 (10th Cir. 1998), plaintiff, who suffered from posttraumatic stress disorder, requested leave of between six weeks and nine months, estimating that the leave would be about four months in duration. In circumstances almost identical to those in the instant case, plaintiff was granted three separate leaves of absence, each for thirty days, but his fourth requested leave, also for thirty days, was denied, and plaintiff was fired. The Tenth Circuit upheld the district court's award of damages, specifically finding that the requested leave would have been a reasonable accommodation. *Id.*

These cases are indistinguishable from the case before this Court. In one of those cases, the total amount of leave time requested was greater than the instant one, *Cehrs*, 155 F.3d 775; in another, the number of requests for leave was equal to those here, *Rascon*, 143 F.3d 1324; and in another, the individual could give only an approximate return date, *Criado*, 145 F.3d 437. Yet, each of the four circuits courts refused to hold that the requested leave was unreasonable as a matter of law.

We have carefully scrutinized those cases where a requested leave of absence was deemed "unreasonable" on a motion for summary judgment, and conclude that those decisions involved a unique set of facts not present in the instant case. One

type of case in which courts have concluded that the requested accommodation was "unreasonable" as a matter of law involved requests for leave much longer than seventeen weeks, usually with the plaintiff seeking more than one year of leave. *See Corder v. Lucent Technologies, Inc.*, 162 F.3d 924 (7th Cir.1998) (plaintiff had already received forty-three weeks leave in 1991, nineteen weeks in 1992, and nine weeks in 1993 before her termination); *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222 (11th Cir.1997) (plaintiff had received approximately ten months of leave prior to termination); *Rogers*, 87 F.3d 755 (requested accommodation would have been an approximate one-year leave of absence). Here, plaintiff's requested leave totaled approximately seventeen weeks.

Another type of case in which courts have found that the requested leave was unreasonable as matter of law, the absences were so erratic that the employer literally could not know from one day to the next whether the employee would be returning to work or not or at what time he or she might arrive. *See Waggoner v. Olin Corp.,* 169 F.3d 481 (7th Cir.1999) (plaintiff missed work or was late for work forty times during the twenty months she worked for defendant); *Smartt v. Charlotte Housing Auth.*, 1998 WL 760866 (W.D.N.C. Apr.7, 1998) (plaintiff could not report to work on time because she alleged her medication made her drowsy); *Scott v. American Airlines, Inc.*, 1997 WL 278129, *5 (N.D.Tex. May 15, 1997) (employee's request was to "arrive late whenever she so chooses and however late she so chooses"). In the instant case, plaintiff asked for one continuous leave of absence, repeatedly kept his employer aware of his availability, and had established a satisfactory record of attendance in his prior two years of employment with the defendant. Angstreich Deposition at 123–25.

In yet another type of case in which courts have found that the requested leave was unreasonable as matter of law, the

courts concluded that even upon plaintiff's return to work after the period of leave, he or she would still be unqualified to work. *Coleman v. Computer Assocs. Int'l, Inc.*, 139 F.3d 904 (9th Cir.1998) (Table) (plaintiff herself testified that she would be unable to return to work, even after a leave of absence, because of stress associated with the job); *Tyndall v. Nat. Educ. Ctrs., Inc.*, 31 F.3d 209 (4th Cir.1994) (defendant's accommodations of plaintiff's disability could not have significantly improved plaintiff's attendance level, as a majority of her absences were not related to her own disability, but were caused by her need to tend to her son's disability, which an employer is not obligated to accommodate through scheduling modifications); *Allen v. GTE Mobile Comm. Serv. Corp.*, 1997 WL 148670 (N.D.Ga. Feb.26, 1997) (plaintiff, her treating physician, and the Social Security Administration officials who reviewed her disability benefits application all agreed that she could not return to work because the workplace itself was contributing to the severe emotional problems that caused her disability). There was absolutely no evidence adduced by defendant in the instant case that plaintiff would be unable to return to work upon the completion of his leave of absence, and defendant's own supervisor testified that plaintiff had performed satisfactorily prior to his request for accommodation. Angstreich Deposition at 123–25.

Finally, courts have found that the requested leave was "unreasonable" in cases where the plaintiff was working under exigent time limitations and was hired primarily to complete a specific task. In *Stubbs v. Marc Ctr.*, 950 F.Supp. 889 (C.D.Ill.1997), upon which defendant places heavy reliance, the plaintiff was hired in September, primarily to prepare the defendant's annual budget, which was due in December. In October, however, only twenty-one days after he had begun his employment, plaintiff requested a leave of absence and was fired. While the court granted summary judgment in favor of defendant, this case is distinguishable from the instant one. Plaintiff in the present case was not hired to complete a specific, highly time-sensitive task, and had worked over two years before he requested the accommodation now in question. Conversely, in *Stubbs*, the court found that the employee, if granted his requested leave, would have to achieve "superhuman" efficiency upon his return in order to complete in time the task for which he was primarily hired. *Id. at* 894. Defendant's generalized assertion that it was "entering its busiest season" is not at all analogous to an employee specifically hired to complete a project within three months of his hiring date. Defendant's Memorandum of Law at 6.

■ We therefore conclude that a court may hold, without the need for trial, that a requested leave of absence is an unreasonable request for accommodation, only in unusual circumstances, none of which are present in the instant case. Examples of such circumstances are: 1) where the request is for a very long leave of absence, such as one year (although we do not here hold that any exact number is the "red line" that demarcates the reasonable from the unreasonable); 2) where the absences are so sporadic that the employer has no way of knowing, from one day to the next, if their employee will even be reporting to work; 3) where it is clear that, even when the employee returns from the requested leave of absence, he or she will still be unqualified to perform the essential functions of their job; or 4) where the employee was hired to perform a specific task in a finite period of time, and the leave of absence would make it impossible for that task to be completed in that time.[1]

■ As previously noted, it is undisputed that the ADA was intended to protect those suffering from mental illness. *See* 29 C.F.R. § 1630.2(h). It is equally undisputed that the ADA contemplates leaves of absence as a possible reasonable accommo-

---

1. This list was not meant to be exhaustive.

dation under the ADA. *See·Criado*, 145 F.3d at 443. The facts here impel us strongly to the conclusion that, at least, there is a triable issue as to the reasonableness of the leaves sought by plaintiff. Despite the complexity and uncertain course of mental illness, plaintiff and his doctor were able to give a reasonable estimate as to when he would be able to return to work. Plaintiff had recently been released from the hospital. His doctor testified that the October 13 return to work date was "more certain[ ]", because it was based on "actual clinical improvement" by plaintiff. Duffy Deposition at 57–59. Admittedly, the October 13 return date predicted by plaintiff was not certain. Yet no person recovering from clinically diagnosed mental illness, especially while suffering symptoms of this illness, can give an absolute date as to when his symptoms will ameliorate to the point that he will be able to return to work. To require such certainty, and to read such a requirement into the principle that an employer need not "wait an indefinite period for an accommodation to achieve its intended effect," *Myers*, 50 F.3d at 283, would be to eviscerate much of the protection afforded under the ADA.

A jury may well find that plaintiff's request for a seventeen-week leave was not reasonable and that defendant has accorded all accommodation to which plaintiff was entitled under the ADA. We cannot say, however, as matter of law, that plaintiff's request for a seventeen-week leave was so unreasonable that a jury should not be allowed to decide this issue.[2]

III. *Plaintiff's Claim that Defendant "Exacerbated" His Mental Illness*

While we thus hold that plaintiff has a right to present to the jury a claim under the ADA related to his wrongful termination, we grant defendant's motion to the extent that it seeks to dismiss plaintiff's claim that defendant's three-week delay in granting plaintiff's request for reduced hours and responsibility "exacerbated" plaintiff's mental illness. Plaintiff's Memorandum of Law at 18.

■ As with all claims under the ADA, plaintiff must show that this three-week delay in granting plaintiff's request was motivated by discriminatory intent. *Criado*, 145 F.3d at 441; *Jacques*, 96 F.3d at 511. However, plaintiff has adduced absolutely no evidence to show that plaintiff's three-week delay was motivated by an attempt to discriminate against plaintiff because of his mental illness. We have construed the pleadings liberally, cognizant of the fact that intent is difficult to prove. *See Chertkova v. Connecticut General Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir.1996). Here, however, plaintiff's claim has absolutely no basis whatsoever.

The following facts are undisputed. On Sunday, May 4, 1997, plaintiff sent an inter-office memo to his supervisor requesting a reduction in hours and a lessening of work responsibilities. On May 8, just four days after plaintiff's request, defendant's Vice President of Human Resources sent a memo to plaintiff requesting that he provide her with a written statement from his physician indicating the nature of the disability and the need for the requested accommodation. On May 15, plaintiff provided this note from his physician. On May 21, just six days after receiving the note, the Vice President of Human Resources sent a memo to Arthur Angstreich, the Head of the Tax Department, summar-

---

2. To the extent that plaintiff seeks to state a claim under New York Executive Law § 296 that defendant discriminated against him because of his disability, as opposed to making a claim for defendant's failure to accommodate plaintiff's disability, defendant's motion is denied for the reasons stated above. As is well established, the legal standard for a discrimi-

nation claim under the ADA and under New York Executive Law § 296 are essentially the same. *See, e.g., Disanto v. McGraw–Hill, Inc./ Platt's Div.*, 1998 WL 474136, *6 n. 4 (S.D.N.Y. Aug.11, 1998); *McIntosh v. Brookdale Hospital Med. Ctr.*, 942 F.Supp. 813, 821 (E.D.N.Y.1996), *aff'd*, 125 F.3d 844 (2d Cir. 1997) (Table).

izing plaintiff's request. On May 28, Angstreich returned to work after being out of town. On May 29, on his very first day back in the office, Angstreich sent plaintiff a memo informing him that, effective immediately, his hours were reduced. After a meeting on May 30, it was agreed that plaintiff would no longer be responsible for reviewing foreign tax payments or matters related to an on-going audit.

We are simply unable to understand how plaintiff intends to prove that this "delay" was motivated by discriminatory intent. Plaintiff presents us with no evidence, even circumstantial, that defendant's response to plaintiff's request was motivated by discriminatory intent. Plaintiff appears content to rely on the unsubstantiated assertion in the complaint that "defendants refusal to timely provide him with the requested accommo da tion....required [him] to be medicated with antidepressants." Complaint at ¶ 8. Unfortunately for plaintiff, his own deposition testimony contradicts even these unsubstantiated assertions, since he freely admits that he would have required antidepressant medication regardless of the action taken by defendant. Plaintiff's Deposition at 90. Moreover, even if some circumstantial evidence did exist to substantiate these assertions, plaintiff fails to direct the Court to any evidence or any testimony from his physician or from any physician that defendant's actions could have exacerbated his condition.

This analysis of the three-week "delay" is even more compelling when one notes that, under the ADA, "[a]n employee's request for reasonable accommodation requires a great deal of communication between the employee and employer.... [B]oth parties bear responsibility for determining what accommodation is necessary." *Criado*, 145 F.3d at 444; *see also Cehrs*, 155 F.3d at 783. In fact, court's have often explained that an employers's failure to interact with the employee in order to create a reasonable accommodation can form the basis for a finding of liability on the part of the employer. *Id.* Plaintiff's May 4 letter requesting accommodation is exceedingly vague, stating only that "we should discuss the priorities of the projects for which I am responsible for at this time or reschedule or reassign as you deem necessary." Moreover, the central reason given by plaintiff in his May 4 request was due to "colitis and diverticulitis," and plaintiff only makes cryptic reference ("[my condition is] directly affected by unusually stressful conditions") to the mental illness that formed the primary basis for his requested leave of absence a mere four weeks later. Defendant was legally required to interact with plaintiff in creating a reasonable accommodation for his request, and given the obtuse nature of the letter in terms of both what kind of accommodation plaintiff was requesting and why he was requesting it, a three-week delay in granting this request was clearly reasonable. No jury could reasonably find a discriminatory intent in such action, and thus we dismiss all plaintiff's claims that seeks damages stemming from defendant's alleged "delay" in reducing his hours and responsibility. An alternative basis for such a holding is that, as part of the burden shifting analysis we are required to employ, defendant has come forward with a sufficient non-discriminatory reason for the employment decision. *Cehrs*, 155 F.3d 775.

■ To the extent that plaintiff's claim for emotional damages relies on defendant's refusal to grant him a final leave of absence, as opposed to its "delay" in reducing hours, we will not dismiss this claim at this time. Since intrinsic to our ruling that plaintiff has stated a claim for wrongful termination under the ADA is the determination that defendant may have engaged in intentional determination, plaintiff certainly has a right to argue that such alleged discrimination exacerbated his mental illness. We are admittedly mystified as to the extent of plaintiff's damages, since by even his own account, he was promptly working for a new em-

ployer shortly after the events in question took place. In fact, plaintiff relies heavily on his prompt return to the work force in order to show that he would been "qualified" to return to work if defendant had granted his final request for additional leave. *Id. at* 6. The paucity of damages, however, is not a basis for summary judgment when federal question jurisdiction exists.

### IV. *Plaintiff's Claims Related to a Generally Unpleasant Work Environment*

■ For essentially the same reasons as stated above, we also dismiss plaintiff's claims that he was discriminated against by being: 1) re-located to an "inferior" office; 2) forced to prepare tax returns even though he was an experienced employee; 3) denied "required information necessary for his time [sic] completion of work;" and 4) burdened with an "inadequate" computer program. Complaint ¶ 8. In regard to the claim that he was forced to prepare tax returns and forced to use an "inadequate" computer program, these claims are dismissed because plaintiff cannot demonstrate any discriminatory intent whatsoever. *Criado,* 145 F.3d at 441; *Jacques,* 96 F.3d at 511. Defendant alleges and plaintiff does not deny that the department was so busy that even experienced employees, including plaintiff's supervisor, were asked to prepare tax returns. Defendant's Memorandum of Law at 11 n. 4. Similarly, defendant alleges and plaintiff does not deny that everyone in the department was using the same computer program. *Id.* Clearly, no reasonable jury could find discriminatory intent on the part of defendant if everyone in the department was subjected to identical conditions.[3]

Plaintiff simply fails to provide us with any evidence, even circumstantial, that he was subjected to this so-called "hardship" because of his disability and/or because he requested accommodation for his disability. In the context of his ultimate firing, we construed the pleadings liberally, and assumed that because he was fired shortly after making the severity of his illness known and requesting accommodation, discriminatory intent could be implied for the purposes of this motion. For most of the claims related to these "unpleasant" work conditions, plaintiff does not even provide the Court with the specific dates that this conduct took place.[4] In fact, it may even be that some or all of these conditions were imposed before the extent of his disability was made known to the supervisors taking this action. In actuality, it seems that plaintiff does not even seek to allege that these "unpleasant" conditions were created to discriminate against him, but merely that defendant must be held responsible for "exacerbating the symptoms of his disabilities" by not rectifying these conditions. Complaint ¶ 7. Since plaintiff's complaint lacks any claim for intentional infliction of emotional distress, and the ADA offers no protection when there is no discriminatory intent, these allegations must fail.

Similarly, plaintiff's claims that defendant sought to "humiliate and embarrass" him, first by placing him in an office "a substantial distance from his department" (albeit in the same building), and later by placing him in an unattractive, "windowless" office, are once again absent any allegation that such treatment was motivated by a desire to discriminate against plaintiff for being disabled and/or because he sought accommodation for his disability. Since the ADA requires intentional discrimination, and both the complaint and all of the papers submitted in conjunction

---

**3.** Again, another way of stating this proposition is that plaintiff has come forward with a legitimate non-discriminatory reason for the employment action taken. *Cehrs,* 155 F.3d 775.

**4.** There is, admittedly, one reference to a date in this context, when plaintiff informs the Court that his office was moved sometime "in 1997." Plaintiff's Rule 56.1 Statement at 6.

with this motion fail to provide any evidence that these circumstances were imposed upon plaintiff with a discriminatory purpose, or even provide the specific date or context in which these decisions took place, we can only assume plaintiff is seeking to hold defendant liable merely for "the exacerbation of plaintiff's symptoms." Complaint ¶ 8. Since the complaint contains no claim of intentional infliction of emotional distress, this claim must also fail.

Finally, in regard to plaintiff's claim that he was "denied required information necessary for his time [sic] completion of work," *Id.*, plaintiff merely makes this vague assertion in his complaint, but fails to explain its meaning in any of the voluminous papers submitted to the Court in conjunction with this motion. In fact, none of the papers submitted by plaintiff in opposition to the motion even refers to this allegation. As a consequence, it is impossible to discern what actions were taken by the defendant in this regard, whether such actions could rise to the level of intentional discrimination, or whether other members of the department were treated differently in regard to their access to information; because the burden is on plaintiff to establish at least a prima facie case of discrimination, this claim is dismissed as well. *Criado,* 145 F.3d at 441; *Jacques,* 96 F.3d at 511.

### V. *Plaintiff's Claim for Punitive Damages*

■ We also dismiss all portions of plaintiff's claims seeking punitive damages. To recover punitive damages, plaintiff must show that defendant acted with malice or reckless indifference to his rights under the ADA. 42 U.S.C. § 1981a(b)(1). In this case, plaintiff requested a reduction of hours and work responsibility because of his disability. Although it was the busiest time of year in the tax department, defendant granted this request for reduced hours and responsibility. When plaintiff determined that this accommodation was

insufficient, he requested a six-week leave of absence, which was granted. When this accommodation proved insufficient, plaintiff requested and received an additional one-month of leave. At the end of this leave period, plaintiff requested an additional one-month of leave, and this request was also granted. It was only after plaintiff's fifth request for accommodation that his request was denied.

Throughout this process, defendant sought legal advice in regard to its obligations under the ADA. *Meling v. St. Francis College,* 3 F.Supp.2d 267, 274–75 (E.D.N.Y.1998). Defendant specifically requested and received information from plaintiff's physician in attempting to accommodate plaintiff's needs. *Id.* Defendant did not show any hostility toward accommodating plaintiff's disability, as is evidenced by its granting of the first four of plaintiff's requests. *Id.* Thus, no reasonable jury could find that defendant's conduct constituted such malice or reckless indifference to plaintiff's rights under the ADA such that he is entitled to punitive damages.

### CONCLUSION

For the reasons stated above, defendant's motion to dismiss plaintiff's claim for wrongful termination in violation of the ADA is denied. However, defendant's motion is granted to the extent that we dismiss all plaintiff's claims related to an "unpleasant" work place, we dismiss plaintiff's claim that a three-week delay in reducing his hours exacerbated his mental illness, and we dismiss plaintiff's claim for punitive damages.

SO ORDERED.