Andelas, J.E (dissenting).
Because the majority’s examination of the “reasonable accommodation” provisions of the State and City Human Rights Laws ignores binding precedent in this and numerous other courts, including the Court of Appeals and the United States Supreme Court, and relies instead upon dicta in this Court’s majority opinion in Williams v New York City Hous. Auth. (61 AD3d 62 [2009]), I dissent and would affirm the dismissal of petitioner’s CPLR article 78 proceeding.
The facts are fairly stated by the majority and are not in dispute. Briefly, the record establishes that petitioner* was employed by the City’s Department of Homeless Services (DHS) since 1988 in noncompetitive civil service positions, most recently as a community assistant at the Powers PATH Family facility in the Bronx. At some point, petitioner was diagnosed with breast cancer and requested a three-month unpaid medical leave of absence under the Family and Medical Leave Act (FMLA) (29 USC § 2601 et seq.), which was approved for the period July 31 to October 27, 2006. By letter dated August 11, 2006, petitioner requested an additional year of medical leave under FMLA for the period through August 11, 2007. By letter dated October 16, 2006, petitioner was informed:
“[Y]our request cannot be granted at this time *191 because FMLA is for a maximum period of 12 weeks (approved for 7/31/06-10/27/06) and you are not eligible for a Medical Leave of Absence.
“An unpaid Medical Leave of Absence is not an option available to you because it is only granted to permanent civil service employees, per the Rules and Regulations for Employees Covered under the Career & Salary Plan. You are an employee in a noncompetitive title and therefore you are not eligible for a Medical Leave of Absence.
“Your anticipated return to work date is October 30, 2006. Please contact your Personnel Liaison . . . to facilitate your return to work. If you fail to comply with the directives of this letter you will be subject to disciplinary action.”
Petitioner was thereafter notified in a letter dated October 27 that if she did not return to work by October 30 she would be subject to discharge. She then telephoned one of DHS’s leave and retirement benefits analysts and asked if she could obtain any further extension of her medical leave of absence due to her breast cancer condition. Respondents’ representative replied in the negative and informed petitioner that she had to return to work as scheduled or be subject to discharge. According to petitioner, after she failed to return to work on the appointed date, she was discharged on or about November 1, 2006. For purposes of this proceeding, respondents agree that the date of petitioner’s scheduled return was October 30, 2006; however, they contend that taking petitioner’s use of all available leave time into consideration, the date of her scheduled return was actually January 5, 2007, and she was not officially terminated until after she failed to return on that date.
Petitioner then commenced this proceeding as a plenary action on January 25, 2007, alleging that DHS, in denying her request for additional medical leave and discharging her because she was unable to report to work, discriminated against her because of her disability and her race. As pertinent to this appeal, petitioner’s first cause of action alleges that by denying her “August 11, 2006 request for an approved medical leave of absence through August 11, 2007,” and by discharging her, respondents discriminated against her in violation of the State Human Rights Law (Executive Law § 296 [1] [a]; [3] [a]). Her second cause of action alleges that her request was actually for “a reasonable accommodation under Title 8, Chapter 1, § 8-102 *192 (18)” of the.City’s Human Rights Law (Administrative Code tit 8) and that respondents’ denial of that request and her discharge discriminated against her in violation of section 8-107 (1) (a) and (15) of that law.
In support of their motion to convert petitioner’s action to an article 78 proceeding and to dismiss it for failure to state a cause of action, respondents argued that they could not lawfully offer any more leave time, and when petitioner failed to return to work, they were left without any choice but to terminate her employment. They further contended that DHS cannot be called irrational for acting in accordance with a long-standing citywide regulation that treats the civil service classes differently. Nor, it was argued, could DHS be called irrational because it refused to unilaterally amend the federal FMLA to provide for a one-year leave of absence rather than the 12-week leave authorized by the statute. Therefore, respondents argued, where petitioner was only entitled to a 12-week unpaid leave of absence pursuant to FMLA, which guarantees eligible employees 12 weeks of leave in a one-year period following certain events (in this case a health problem), terminating an employee who did not return to work and who was ineligible for additional leave was entirely rational and must be upheld.
In opposition, petitioner argued that, contrary to respondents’ argument that she was not a person with a disability within the meaning of the State and City Human Rights Laws, she states a claim that by denying her request for an unpaid medical leave of absence without even considering the feasibility of her request, based solely on its policy of denying any such leave to noncompetitive employees, and then discharging her. based upon her inability to report to work, respondents discriminated against her in violation of the State and City Human Rights Laws.
Supreme Court granted respondents’ motion pursuant to CPLR 103 (c) and 3211 (a) (7), converted the plenary action to an article 78 proceeding, and dismissed the “complaint” for failure to state a cause of action.
In so ruling, the court, after an extensive and persuasive analysis of the applicable law, found that petitioner failed to allege facts demonstrating that her breast cancer falls within the definition of the term “disability” in that the fact that one suffers from breast cancer, in and of itself, does not establish that she has a “disability” under the State and City Human Rights Laws, and that a physical condition that prevents an employee from *193 reporting to work and requires her to miss an unacceptably high number of workdays is not a disability within the meaning of Executive Law § 292 (21). The court further found that petitioner’s complaint indicated she was unable to work at the time of discharge, failed to allege she would have been capable of performing the functions of her job in a reasonable manner upon provision of reasonable accommodations, and failed to set forth factual allegations sufficient to show that upon the provision of reasonable accommodations, she could perform the essential functions of her job.
Instead, the court found, the complaint contained only conclusory assertions without factual support in that there is no allegation that respondents had any way of knowing whether petitioner would ever report to work in the future. In fact, the court found, petitioner alleged that she “was then, and remains, unable to return to work for the respondent DHS because of her medical condition of breast cancer.” Therefore, the court held, although a leave of absence may be held to constitute reasonable accommodation, petitioner failed to allege any of the factors that would support such a conclusion in this case and set forth only the untenable claim that DHS was required to accommodate her by holding her job open indefinitely, which is insufficient under both the State and City Human Rights Laws.
Finally, the court held that since it is uncontested that petitioner held a noncompetitive title at the relevant times, and since there were no allegations that DHS’s determinations were based on any factor other than her noncompetitive title, her discrimination claims were insufficiently pleaded. Since DHS’s determinations were based on its leave policies applicable to noncompetitive titles, the court held that petitioner failed to support a claim that respondents acted arbitrarily, capriciously, or in violation of lawful procedure.
Petitioner now appeals and, relying solely upon Parker v Columbia Pictures Indus. (204 F3d 326 [2d Cir 2000]) and District Court decisions such as McFarlane v Chao (2007 WL 1017604, 2007 US Dist LEXIS 23446 [SD NY 2007]), Picinich v United Parcel Serv. (321 F Supp 2d 485, 516 [ND NY 2004]), Rogers v New York Univ. (250 F Supp 2d 310, 316 [SD NY 2002]) and Powers v Polygram Holding, Inc. (40 F Supp 2d 195, 199 [SD NY 1999]), argues as she did below that respondents violated the State and City Human Rights Laws because DHS made no individualized assessment of the feasibility of her request for accommodation and simply applied its uniform policy based upon *194 her noncompetitive civil service classification in denying her an additional leave of absence, which would have resulted in her receiving a total of approximately 13 months of unpaid medical leave to which she was otherwise not entitled.
The majority mentions Parker, but only in support of its conclusion that employers in every case are required to consider requested accommodations by engaging in an individualized interactive process, a requirement no one questions. It fails to mention any of the other cases relied upon by petitioner, but instead chooses, as the Williams majority did, to decide this appeal not on the arguments made by the parties in their briefs, but on arguments it thinks should have been presented. As I noted in my concurrence in Williams (61 AD3d at 82-83), this tendency to decide appeals on the basis of arguments not raised by the parties has recently become a recurring issue in this Court and is so unfair to the parties as to implicate due process concerns. The Court of Appeals has recently had occasion to voice similar sentiments, equally binding on this Court, when it stated:
“For us now to decide this appeal on a distinct ground that we winkled out wholly on our own would pose an obvious problem of fair play. We are not in the business of blindsiding litigants, who expect us to decide their appeals on rationales advanced by the parties, not arguments their adversaries never made” (Misicki v Caradonna, 12 NY3d 511, 519 [2009]).
While appellate judges do not “sit as automatons” (id., quoting dissenting Judge Smith’s reference to Karger, Powers of the New York Court of Appeals § 17:1, at 591 [3d ed rev]), neither are they “freelance lawyers” (Misicki at 519). As Karger points out, “This general restriction against the raising of new questions on appeal is also binding on the Appellate Division” (§ 17:1).
The majority simply ignores this admonition to decide only those issues presented by the parties in their appellate briefs. However, given the long-standing requirement of preservation of issues for appellate review, the majority’s insistence on considering issues not raised by the parties and then deciding this appeal on the basis of new arguments of its own making is just plain wrong. While there are exceptions to any rule, those exceptions are very rare, and this case, as was Williams', is not one. On her appeal to this Court, the plaintiff in Williams totally *195 abandoned any arguable claim she may have had under the City Human Rights Law. That law and its application to the facts of that case was simply never presented to this Court for review.
In any event, the majority continues to treat this article 78 proceeding as a plenary action and seemingly anticipates further proceedings on remand to develop “a fuller factual record.” However, inasmuch as petitioner does not challenge Supreme Court’s conversion of this action to an article 78 proceeding, which is summary in nature, our review is limited to whether respondents’ determinations were arbitrary and capricious, an abuse of discretion, or affected by an error of law (CPLR 7803 [3]), i.e., whether such determinations had a rational basis (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]). Despite the majority’s suggestion that we are not limited to that standard of review because Supreme Court treated petitioner’s claims “as a hybrid action in law and as a proceeding pursuant to Article 78,” the only two claims pursued by petitioner, both in Supreme Court and on appeal, allege violations of the State and City Human Rights Laws and seek reinstatement to her former position with back pay. Thus, no matter how Supreme Court characterized this proceeding, it is well settled that an article 78 proceeding is the only remedy by which a dismissed public employee may seek reinstatement and back pay (see Austin v Board of Higher Educ. of City of N.Y., 5 NY2d 430 [1959]). Therefore, in challenging respondents’ actions, it is incumbent on petitioner to present a sufficient factual basis to establish her prima facie entitlement to relief. Given that standard, Supreme Court properly determined that petitioner failed to set forth in her complaint factual allegations sufficient to show that, upon the provision of reasonable accommodations, she could perform the essential functions of her job (McKenzie v Meridian Capital Group, LLC, 35 AD3d 676, 677 [2006]). She also failed to allege sufficient facts indicating that her request for approximately 13 months of medical leave due to her breast cancer condition was reasonable (see e.g. Powers, 40 F Supp 2d at 201; Micari v Trans World Airlines, Inc., 43 F Supp 2d 275, 282 [ED NY 1999], affd 205 F3d 1323 [2d Cir 1999]).
It is well settled that a complaint, or in this case a petition, states a prima facie case of discrimination due to a disability under both the State and City Human Rights Laws if the individual demonstrates that he or she suffered from a disability *196 and that the disability caused the behavior for which he or she was terminated (Pimentel v Citibank, N.A., 29 AD3d 141, 145 [2006], lv denied 7 NY3d 707 [2006]). The term “disability” is defined as “a physical, mental or medical impairment . . . which, upon the provision of reasonable accommodations, do[es] not prevent the complainant from performing in a reasonable manner the activities involved in the job . . . held” (Executive Law § 292 [21]; see also Umansky v Masterpiece Intl., 276 AD2d 691, 692 [2000]). Supreme Court correctly found that petitioner not only failed to allege sufficient facts to establish prima facie that she suffers from a disability as defined by law, but also failed to set forth factual allegations sufficient to show that upon the provision of reasonable accommodations, she could perform the essential functions of her job (McKenzie, 35 AD3d at 677). In fact, petitioner failed even to specify what the essential functions of her position as a community assistant entailed, and which functions she was unable to perform, with or without reasonable accommodations.
Nevertheless, the majority holds that under the supposedly broader protections afforded by the State and City Human Rights Laws, the first step in providing a reasonable accommodation is to engage in a good faith interactive process that assesses the reasonableness of the accommodation requested. However, it offers no compelling reason for deviating from well-established principles regarding discrimination suits. In determining whether an individual has alleged a cause of action for discrimination based upon disability, it would seem that the first step for this Court would be to determine whether the complainant has alleged sufficient facts to establish prima facie that he or she has a disability within the meaning of the State and City Human Rights Laws.
It is also well settled that in any claim of discrimination, whether based upon race, sex, or in this case disability, the complainant must carry the initial burden of establishing a prima facie case (McDonnell Douglas Corp. v Green, 411 US 792, 802 [1973]). The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for its employment action, in this case respondents’ denial of a further leave of absence under FMLA and the termination of petitioner’s employment after she failed to return .to work at the end of her sick leave. Once the employer meets this burden, the presumption of intentional discrimination disappears, and the burden again shifts to the complainant to demonstrate that the *197 employer relied upon impermissible considerations in coming to its decision (Koester v New York Blood Ctr., 55 AD3d 447, 448 [2008]).
In reversing and reinstating petitioner’s causes of action, the majority finds that she stated causes of action for discrimination arising from respondents’ failure to engage in an individualized process when considering her request for extended medical leave and their failure to reasonably accommodate her. However, not only does the majority ignore the fact that the original plenary action was converted to an article 78 proceeding, which by its very nature is intended to be summary in nature, but it fails to deal with the threshold issue of whether petitioner has pleaded sufficient facts to establish that she is disabled within the meaning of the State and City Human Rights Laws. As previously noted, Supreme Court found that petitioner failed to allege facts demonstrating her breast cancer fell within the definition of the term “disability” in that the fact that one suffers from cancer, in and of itself, does not establish that one has a “disability” under the State and City Human Rights Laws, and a physical condition that prevents an employee from reporting to work and requires an employee to miss an unacceptably high number of workdays is not a disability within the meaning of Executive Law § 292 (21).
Nevertheless, the majority, starting with petitioner’s allegation that she was forced to delay her scheduled cancer surgery as a result of the termination of her health benefits and her allegation that she is a “person with a disability as defined in Executive Law § 292 (21),” jumps to the conclusion that “it can reasonably be inferred that plaintiff needed the requested leave to be able to have and to recover from cancer surgery, after which time she anticipated that she would be able to return to work.” The majority also faults Supreme Court for focusing exclusively on petitioner’s request for a one-year leave of absence, even though respondents also denied petitioner’s “modified request for ‘any’ additional medical leave,” and finds that this fact alone requires remand because the court’s decision was premised on the incorrect assumption that the only leave request was effectively “open-ended”: “[According all inferences to [petitioner], [the majority] fail[s] to see how she was not asking for an extension of leave for up to one year, and why the City could not reasonably accommodate that request.”
While the foregoing are interesting conclusions, unfortunately they are not urged by petitioner on appeal and lack any support *198 in the record. As to the majority’s first conclusion, that petitioner anticipated she would be able to return to work after a reasonable period of recovery from her scheduled cancer surgery, as Supreme Court correctly found, her only allegation is that she “was then, and remains, unable to return to work . . . because of her medical condition of breast cancer.” Nowhere in the record does petitioner ever allege that she anticipated returning to work or, if so, when. The majority’s second conclusion, that petitioner modified her request for an additional one-year leave of absence, is likewise belied by petitioner’s brief, which makes no such claim of a modified request, but simply argues that
“[i]n applying such uniform policy and denying her request for an additional leave of absence which would have resulted in a total unpaid medical leave of absence of approximately 13 months for her, without making inquiry and analysis of the specific circumstances of plaintiffs request and its feasibility .. . defendants violated plaintiffs rights under the state and city human rights laws.”
There is simply no basis in the record for the majority’s conclusion, which again is not urged by petitioner, that after her formal request for additional leave was denied, her subsequent phone call to DHS’s benefits specialist was a “modified” request for “any” additional medical leave. At most, it was a request for reconsideration of her original request.
This Court has recently held that federal and state disability discrimination statutes envisage an employer and employee engaged in an interactive process in arriving at a reasonable accommodation for a disabled employee; however, it is incumbent upon the disabled employee to specify the accommodations sought and to show that he or she can perform the particular job with such accommodation (see Pimentel, 29 AD3d at 149). It is self-evident that before reaching the question of a reasonable accommodation and an interactive process to achieve such result, there must first be a prima facie showing that the complainant is disabled within the meaning of the applicable statutes.
Adopting the majority’s approach, petitioner assumes that she suffers from a disability and, citing the 2007 Southern District decision in McFarlane v Chao (supra), proceeds to the next step, arguing that requests for a leave of absence for a medical reason can constitute a request for a reasonable accom *199 modation under the State and City Human Rights Laws, including situations where, as here, the employee is unable to work because of the effects of illness. However, McFarlane, a case brought pursuant to the Family Medical Leave Act (FMLA) (29 USC § 2601 et seq.) and the Rehabilitation Act of 1973 (29 USC § 701 et seq.), does not help petitioner.
In McFarlane, the district court found that the plaintiff, who had been appointed to a temporary position that expired September 30, 2000 unless otherwise extended, failed to sustain her minimum burden of establishing a prima facie case of discrimination. Unlike petitioner, McFarlane had already undergone surgery to remove a tumor from her right breast. Thereafter, she requested a three-month leave without pay under the FMLA. In support of her August 24, 2001 request, she attached letters from her oncologist and psychologist stating she was unable to work at that time and required total rest, relaxation and therapy. By letter dated August 28, 2001, McFarlane’s request was granted retroactively from August 7 through termination of her appointment on September 30, 2001. In dismissing McFarlane’s subsequent suit charging discrimination based upon refusal to provide reasonable accommodation, the district court found that while the burden of establishing a prima facie case under the Americans with Disabilities Act of 1990 (ADA) (42 USC § 12101 et seq.) or the Rehabilitation Act is not a heavy one (indeed, it has been characterized as “minimal” and “de minimis”), in order for her to demonstrate she had a disability as defined by the Rehabilitation Act, she had to “(1) show that she suffered from a physical . . . impairment; (2) identify the activity that she claimed to be impaired and establish that it constitutes a major life activity, and (3) show that the impairment substantially limited the major life activity previously identified” (Report and Recommendation of Magistrate Judge Pitman, 2007 WL 1017604, *14).
Citing federal case law holding that in order to constitute a substantial impairment, the impact of the impairment must be “permanent or long term” (id., quoting Toyota Motor Mfg., Ky., Inc. v Williams, 534 US 184, 198 [2002]), and that “temporary conditions do not constitute disabilities under the ADA and other statutes” (id., quoting Stephens v Thomas Publ. Co., Inc., 279 F Supp 2d 279, 283 [SD NY 2003]), the Magistrate reported that while the record established the maximum period of Mc-Farlane’s claimed inability to work was seven months, an inability to work for seven months is simply not sufficiently *200 lengthy to constitute a substantial limitation (id. at *14-15, citing Colwell v Suffolk County Police Dept., 158 F3d 635, 646 [2d Cir 1998], cert denied 526 US 1018 [1999]). Accordingly, plaintiff McFarlane did not present sufficient evidence to show that her ability to perform her particular job functions was substantially limited, let alone her ability to perform a broad range of jobs.
In the case at bar, the majority claims that the lower court’s statement that cancer, in and of itself, does not establish that one has a disability within the meaning of the City Human Rights Law is incorrect as a matter of law because a “disability” is fully and conclusively established by nothing more than “an impairment of any system of the body” (Administrative Code .§ 8-102 [16] [b] [1]). As previously noted, it also does not mention McFarlane or four of the other five cases relied upon by petitioner in her brief, but quibbles instead with my reference to Toyota, a case it mistakenly dismisses as irrelevant because, in its opinion, “substantial impairment” of a “major life activity” is a concept that is not part of the definition of disability under either the State or City Human Rights Law.
First of all, contrary to the majority’s intimation that the City Council has carved out a unique definition of disability (“any physical, medical, mental or psychological impairment . . . [meaning] an impairment of any system of the body”), the detailed listing of such impairments in section 8-102 (16) (b) (1), upon which it relies, is virtually identical to the physical impairments defined in the Rehabilitation Act’s regulations (45 CFR 84.3 Q] [2] [i]) that the Supreme Court was dealing with in Toyota (534 US at 194-195). However, as the Supreme Court held there, “[mjerely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity,” examples of which are walking, seeing, hearing and, performing manual tasks (id. at 195). The claimant must further show that the limitation on the major life activity is substantial, which is defined in 29 CFR 1630.2 (j) (1) as “Unable to perform a major life activity that the average person in the general population can perform,” or “Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.” The Supreme Court thus held that “to be substantially limited in performing manual tasks, an individual must have an impair *201 ment that prevents or severely restricts the individual from doing activities that are of central importance to most people’s daily lives. The impairment’s impact must also be permanent or long term” (534 US at 198). Contrary to the majority’s statement that neither the State nor City Human Rights Law requires any showing that the disability substantially limits any major life activity, both laws require an employer to make reasonable accommodation to the needs of persons with disabilities so as to permit the employee with a disability to perform in a reasonable manner “the activities involved in the job” or occupation held (Executive Law § 292 [21], [21-e]) or to enable a person with a disability to satisfy “the essential requisites of a job” (Administrative Code § 8-107 [15] [a]). It goes without saying that performance of “the activities involved in the job” or “the essential requisites of a job” are without doubt major life activities within the meaning of the ADA as well. As to the majority’s reliance upon the Administrative Code § 8-102 (18) provision that an accommodation cannot be unreasonable unless the employer proves that it causes undue hardship, that is exactly the same standard applied by the Supreme Court in US Airways, Inc. v Barnett (535 US 391 [2002]), where it held that undermining a seniority system would create an undue hardship. Rather than being irrelevant to any discussion of disability under the State or City Human Rights Law, the Supreme Court’s holdings in Toyota and Barnett are very relevant, since a complainant’s ability to perform his or her job with or without reasonable accommodations is central to federal, state, as well as local disability jurisprudence. Thus, even assuming petitioner suffers from a disability within the meaning of the City HRL, she still has failed to allege or prove in any way that she is able to perform her job even with a reasonable accommodation.
While McFarlane involved a motion for summary judgment, the result should be no different in this case. The majority’s conclusion that respondents have not met the City HRL’s requirement of pleading as an affirmative defense that even with reasonable accommodation, petitioner could not have performed the essential requisites of her job, is simply incorrect. Since we are dealing with an article 78 proceeding, respondents had the option of either filing an answer in response to the petition, in which they could raise any objection in point of law, or moving to dismiss it for legal insufficiency on those grounds (CPLR 7804 [f]). Such objections can produce a summary disposition of the proceeding (Alexander, Practice Commentaries, *202 McKinney’s Cons Laws of NY, Book 7B, CPLR C7804:7). That is exactly what respondents did in their motion to dismiss the petition, which was made in lieu of answer. Respondents contended that not only did petitioner not show she had proposed and was refused an objectively reasonable accommodation allowing her to fulfill the functions of her job, but she actually admitted that she could not work at all. In response, petitioner did not propose any alternative accommodation, but merely continued to make the argument, which is simply a conclusory statement of law, that by denying her request for an unpaid medical leave of absence without even considering the feasibility of her request, based solely on the policy of denying any such leave to noncompetitive employees, and then discharging her based upon her inability to report to work, respondents discriminated against her in violation of the State and City Human Rights Laws.
Applying the CPLR 3211 standard urged by the majority, Supreme Court correctly found that
“even assuming the truth of the facts asserted in her Complaint, plaintiff fails to allege facts demonstrating that her cancer condition falls within the definition of the term ‘disability’ as contemplated by the NYSHRL and NYCHRL and, accordingly, the termination of petitioner did not constitute an unlawful discrimination on the part of defendants.”
The majority heavily relies upon the Ninth Circuit’s en banc decision in Barnett v U.S. Air, Inc. (228 F3d 1105, 1116 [2000]) for the premise that a good faith interactive process is “the key mechanism for facilitating the integration of disabled employees into the workplace” and notes that that decision was vacated on other grounds. However, the majority’s discussion of Barnett is more significant for what it leaves out.
Robert Barnett was a customer service agent for U.S. Air who injured his back while working in a cargo position at San Francisco International Airport. After returning from disability leave, he discovered he could not perform all the physical requirements of handling freight, and upon his doctors’ recommendation that he avoid heavy lifting and bending, etc., he used his seniority to transfer into the company’s mail room. Subsequently he learned that he was about to be bumped from his mail room job by two employees with more seniority. In the ensuing suit alleging discrimination for failure to provide a reasonable accommodation, the district court granted U.S. Air sum *203 mary judgment for all claims, including Barnett’s claim that U.S. Air had discriminated by not participating in the interactive process mandated by the Equal Employment Opportunity Commission’s regulations implementing the ADA. As does the City Human Rights Law, the ADA’s reasonable accommodation requirement puts the burden on the employer to show that the proposed accommodation will cause undue hardship (see 42 USC § 12112 [b] [5] [A]). Barnett argued that it would have been a reasonable accommodation for U.S. Air to allow him to remain in the mail room by making an exception to its seniority policy, and the key questions before the Ninth Circuit were whether a seniority system is a per se bar to reassignment as a reasonable accommodation, and whether a disabled employee seeking reasonable accommodation should have priority in reassignment.
A majority of the Ninth Circuit held that reassignment is a reasonable accommodation, and that a seniority system is not a per se bar to reassignment, and a case-by-case fact-intensive analysis is required to determine whether any particular reassignment would constitute an undue hardship to the employer (228 F3d at 1120). However, the United States Supreme Court granted certiorari and reversed the Ninth Circuit, holding that even assuming the employee is an “individual with a disability” and the accommodation requested would be reasonable within the meaning of the ADA were it not for one circumstance (there, the rules of a seniority system, and here, civil service rules and regulations), that circumstance alone supports the conclusion that the proposed accommodation is not a “reasonable” one and the statute does not require proof on a case-by-case basis that a seniority system should prevail (US Airways, Inc. v Barnett, 535 US 391, 403 [2002]). Taking one sentence from the Court’s decision out of context, the majority claims the Court explained that accommodation that would conflict with seniority provisions implicated “the employees’ expectations of consistent, uniform treatment” (535 US at 404). Then, in true ipse dixit fashion, it goes on to say that “of course, the provision of additional leave time as an accommodation requires nothing to be ‘taken away’ from any other employee.” What bearing that has on this case is unclear; however, a reading of the full paragraph from which the majority excerpts its quote explains the Court’s rationale for concluding that “the employer’s showing of violation of the rules of a seniority system is by itself ordinarily sufficient” (id. at 405). To require more, the Court explained, might well undermine the employees’ expectations of consistent, *204 uniform treatment because such a rule would substitute a complex case-specific “accommodation” decision made by management for the more uniform impersonal operation of seniority rules. The Court could find nothing in the statute that suggests that Congress intended to undermine seniority systems in this way.
The same rationale applies with even greater force to this case. Here, unlike Barnett, the threshold question of whether petitioner was disabled within the meaning of the respective Human Rights Laws is disputed, whereas in Barnett the plaintiffs status as a disabled person was assumed. Also unlike petitioner, Mr. Barnett was able to return to work and specify what duties he was able to perform with the accommodations he was seeking. Moreover, just as the Supreme Court found in Barnett, there is nothing in the State or City Human Rights Law that suggests that either the Legislature or the City Council intended to undermine their respective civil service systems in any way.
What is uncontested in this case is that petitioner, like all other employees in the noncompetitive class, is not protected by the Civil Service Law (see Matter of Roberts v City of New York, 21 AD3d 329, 330 [2005], lv denied 6 NY3d 702 [2005]), and that section 5.1 of DHS’s Career & Salary Plan provides that the leave of absence requested by petitioner is available only to permanent employees and is applied uniformly to all DHS employees, whether disabled or not. Therefore, under the standard enunciated in US Airways, Inc. v Barnett, petitioner’s request for additional medical leave to which she is otherwise not entitled is, as a matter of law, not a request for a “reasonable” accommodation.
While I do not think the majority, in interpreting a similarly worded statute, would not consider itself bound to follow United States Supreme Court precedent, it nonetheless concludes that the New York City Council, in amending the City Human Rights Law in 2005, legislatively overruled cases that had failed to respect the differences between the City’s local law and its state and federal counterparts. However, while a legislative body can certainly overrule court interpretations of its laws with which it disagrees by amending or clarifying those laws, the City Council, in enacting the Local Civil Rights Restoration Act of 2005, did not do so. It merely added “partnership status” to the categories of proscribed bases for discrimination, lowered the standard for a finding of an unlawful retaliatory action, and urged broad *205 construction of the City Human Rights Law independent of a court’s consideration of counterpart federal and New York State statutes. The simple answer to the majority’s protestations regarding the City Council’s efforts in the Restoration Act to make “core revisions” to the City Human Rights Law is that if the Council wanted to, it could have done so in plain and unequivocal directory language, just as it did in response to the Court of Appeals decision in McGrath v Toys “R” Us, Inc. (3 NY3d 421 [2004]). It did not change any of the provisions relevant to this appeal, and it is not this Court’s function to give its own interpretation to legislation that is plain on its face or to fill in blanks left by the legislative body, especially when there is nothing to indicate that any omissions were inadvertent. Indeed, where an amendment leaves portions of the original act unchanged, such portions are continued in effect, with the same meaning and effect as they had before the amendment (McKinney’s Cons Laws of NY, Book 1, Statutes § 193 [a], Comment, at 359).
The majority also seeks to distinguish US Airways, Inc. v Barnett by alluding to the very different conception and statutory architecture of “reasonable accommodation” under the City Human Rights Law. In urging such distinction, however, it seemingly acknowledges sub silentio that US Airways bars petitioner’s claim under the State Human Rights Law.
In any event, the majority’s attempt to distinguish the import of the City’s local law from the state statute is unconvincing since it fails to demonstrate that the reasonable accommodation required by Administrative Code § 8-107 (15) (a) (“reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job”) is, in any meaningful way, different from the reasonable accommodation requirement of Executive Law § 292 (21-e) (“actions taken which permit an employee . . . with a disability to perform in a reasonable manner the activities involved in the job”).
Nevertheless, the majority concludes that unlike the state statute, the issue of the ability to perform the essential requisites of a job is not bound up in the City Human Rights Law definition of disability or in its definition of reasonable accommodation. It thus concludes that there is no subset of persons with disabilities not included in the City’s requirement of “reasonable accommodation,” and unlike the State Human Rights Law and the ADA, “there is no accommodation (whether it be indefinite leave time or any other need created by a dis *206 ability) that is categorically excluded from the universe of reasonable accommodation,” nor any that may be “unreasonable” as long as they do not cause undue hardship. Such conclusion, however, flies in the face of the holding in US Airways that overriding a uniformly applied seniority system—or, in this case a similar civil service classification system—in order to accommodate a disabled employee is per se not a reasonable accommodation.
To the extent it seeks to distinguish or ignore federal and state precedent on the issue and conclude that in New York City—and only in New York City—an employee is entitled to allege any and all physical ailments as a disability and that such employee is entitled to any and all accommodations, without regard to any seniority or civil service system, the majority seems to rely in great part on the City Council’s statement of purpose or preamble to its Local Civil Rights Restoration Act of 2005. That statement, which included “the sense of the Council that New York City’s Human Rights Law has been construed too narrowly,” sought to underscore that the provisions of the City’s Human Rights Law are to be construed independently from similarly worded or identical provisions of New York State or federal statutes, which were to be viewed “as a floor below which the City’s Human Rights law cannot fall, rather than a ceiling above which the local law cannot rise” (Local Law No. 85 [2005] of City of NY § 1). However, recourse to a preamble is permissible only when ambiguity must be resolved or statutory language interpreted, and the language of a preliminary recital cannot control the enacting part of a statute that is already clear and unambiguous in its terms (McKinney’s Statutes § 122, Comment, at 245). The process of judicial construction of a law or statute also presupposes doubt or ambiguity {see generally McKinney’s Statutes § 71). Thus, inasmuch as the City Council, in enacting the local law, did not amend the clear and unambiguous definitions in the City Human Rights Law pertinent to this appeal, its preamble is clearly precatory in nature, and courts are free to apply the law according to its plain language. Moreover, to the extent the majority’s rationale depends upon the majority opinion in Williams, the concurring opinion in that case noted (61 AD3d at 82) that the plaintiff there never enunciated a specific claim under the City Human Rights Law, and even assuming arguendo that she had raised it at nisi prius, she clearly abandoned any such claim on appeal. Therefore, the vast majority of the majority opinion in Williams is simply dictum, *207 which is not binding on this or any other court and has no stare decisis effect (McKinney’s Statutes § 72, Comment, at 141-142). Contrary to the majority’s assertion that the majority opinion in Williams “necessarily” required consideration of the City Human Rights Law, even if it could be argued that the petitioner had raised a City Human Rights Law issue in the court of first instance, she clearly had not pursued it on appeal. As to the validity of the majority’s reasoning in Williams, it would serve no purpose then or now to address an issue that was not before us. I would simply note that Craig Curian, the author of A Return to Eyes on the Prize: Litigating under the Restored New York City Human Rights Law (33 Fordham Urb L J 255 [2006]), upon which the majority relied so heavily in Williams, admitted that in enacting the Restoration Act, the City Council did not specifically address many issues, but he suggested nonetheless that any failure to address a specific issue in the amendments should be overcome by “judicial activism” (id. at 290-291). My colleagues seem to have taken the bait.
Saxe and Renwick, JJ., concur with Acosta, J.; Andrias, J.P, dissents in a separate opinion.
Order, Supreme Court, New York County, entered October 15, 2007, reversed, on the law, without costs, and plaintiffs claims pursuant to the State and City Human Rights Laws, as alleged in the first and second causes of action, reinstated.

 Although this proceeding was originally commenced as a plenary action, it was converted to an article 78 proceeding. Thus the verified complaint became the petition and plaintiff and defendants became petitioner and respondents.